UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| TIFFANY M. ABBOTT, | ) | |
| | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil No. 09-286-B-W |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
|     *Defendant* | ) | |

### *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD"), Supplemental Security Income ("SSI"), and Child's Disability Benefits ("CDB") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that she is disabled by post-traumatic stress disorder ("PTSD"), panic disorder, bipolar disorder, lumbar disc disease, and obesity, capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated, and the case remanded for further development.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of degenerative disc disease, obesity, and an anxiety disorder, Finding 4, Record at 10; that she did not have an impairment or combination of impairments that

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on April 1, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

met or medically equaled the criteria of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 5, *id*.; that she retained the residual functional capacity ("RFC") to perform unskilled, sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she had to be allowed to alternate between sitting and standing, could occasionally twist, stoop, and climb ramps and stairs, could not crouch or climb ladders, ropes, or scaffolds, and could tolerate low-stress work, defined as work involving no more than incidental public contact, occasional judgment and decision-making, and occasional changes in a work setting, with no limitation on interaction with co-workers and supervisors, Finding 6, *id*. at 11; that, considering her age (21 years old on the alleged disability onset date of July 30, 2006, defined as a younger individual), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-11, *id*. at 14; and that she, therefore, was not disabled from July 30, 2006, through the date of decision (February 3, 2009), Finding 12, *id*. at 15.[2] The Decision Review Board failed to review the decision within 90 days, making it the final determination of the commissioner, *id*. at 1-3; 20 C.F.R. § 405.450(b); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the

---

[2] The plaintiff was insured for purposes of SSD benefits through December 31, 2009, *see* Finding 1, Record at 9, subsequent to the date of the adverse decision from which she appeals, *see id*. at 16. Entitlement to SSI benefits does not depend on insured status. *See, e.g., Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir. 1999). However, to qualify for CDB benefits, the plaintiff had to demonstrate that she was disabled before she turned 22 on August 22, 2006, "and was continuously disabled from the date of her twenty-second birthday through the date that she applied for benefits." *See, e.g., Starcevic v. Commissioner of Soc. Sec*., No. 08-13128, 2009 WL 2222631, at *6 (E.D. Mich. July 22, 2009).

determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(g), 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Steps 2, 3, and 4 of the sequential process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

At Step 3, a claimant bears the burden of proving that his or her impairment or combination of impairments meets or equals the Listings. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(d), 416.920(d)); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria

of that listing, including required objective medical findings. 20 C.F.R. § 405.101 (incorporating C.F.R. §§ 404.1525(c)(3), 416.925(c)(3)). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1526(a), 416.926(a)).

At Step 4, the claimant bears the burden of proof of inability to return to past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.920(f)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.1520(f)); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

## I. Discussion

The plaintiff seeks reversal and remand on the basis of any of four asserted errors, arguing that the administrative law judge failed to (i) determine that she suffered from a mental health impairment prior to October 2008, (ii) find that her lumbar spine impairment met the severity level of Listing 1.04(A), (iii) supportably determine her RFC, or (iv) reconcile inconsistencies between the job that he found her capable of doing, that of document preparer, and the description of that job in the Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT"). *See* Statement of Specific Errors ("Statement of Errors") (Docket No. 11) at 1-8. I agree in part, and recommend that the court find that, on the basis of the third point of error, reversal and remand are warranted. I briefly discuss the remaining points, which I find either to be without merit or to supply no independent basis for reversal.

### A. Flawed RFC Determination

In formulating the plaintiff's RFC, the administrative law judge stated that he accorded "great weight" to the RFC assessment of a treating physician, Bruce C. Denny-Brown, M.D. (mistakenly referred to as "Dr. Brown"), which he deemed "supported by substantial medical evidence." Record at 14. Nonetheless, as the plaintiff points out, *see* Statement of Errors at 7, the administrative law judge inexplicably omitted to adopt portions of Dr. Denny-Brown's opinion, notably his specification of the frequency with which the plaintiff needed to alternate sitting, standing, and walking and his estimate that her impairments or treatment would cause her to be absent from work about once a month, assuming that the work did not exceed the limitations listed, and more frequently if the work exceeded those limitations, *compare* Finding 6, Record at 11 *with id*. at 370, 372.[3]

Regardless of whether the administrative law judge overlooked these limitations or meant to reject them, he erred in at least two respects in omitting to address them. First, to the extent that he did not adopt the findings of Dr. Denny-Brown, a treating source, he was obliged to articulate good reasons for doing so. *See, e.g*., Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating-source opinion as to RFC but "must explain why the opinion was not adopted"). Second, because he found the plaintiff

---

[3] Dr. Denny-Brown stated that the plaintiff could sit for 60 minutes before changing position and stand for 15 minutes before changing position, that she needed to walk around every 60 minutes for up to five minutes, and that she needed the opportunity to shift at will from sitting or standing/walking. *See* Record at 370.

limited to sedentary work, *see* Finding 6, Record at 11, he was required to specify the frequency with which the plaintiff needed to alternate sitting and standing, *see* Social Security Ruling 96-9p ("SSR 96-9p"), reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009), at 158 (in cases involving a sedentary exertional capacity, RFC assessments "must be specific as to the frequency of the individual's need to alternate sitting and standing"). He conveyed to the vocational expert, in relevant part, merely that the hypothetical individual in question was "capable of sedentary work with a sit/stand option[.]" Record at 57.

This error is not harmless. The commissioner bears the burden of proving, at Step 5, that a claimant is capable of performing work existing in significant numbers in the national economy. The administrative law judge relied on the testimony of a vocational expert that approximately nine percent of the unskilled sedentary work base would remain as suitable employment for an individual with the posited RFC and that such an individual could perform the representative occupation of document preparer, DOT § 249.587-018, existing in numbers of approximately 642 jobs in Maine and 144,000 in the nation. *See* Record at 27-28, 57-58.

A vocational expert's testimony must be predicated on a supportable RFC finding. *See, e.g., Arocho v. Secretary of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of vocational expert are relevant only to extent offered in response to hypotheticals that correspond to medical evidence of record; "To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions.").

As counsel for the commissioner noted at oral argument, the vocational expert's testimony reasonably can be construed to indicate that a person performing the document

preparer job can sit or stand at will. *See* Record at 58 (job is sedentary but "certainly could be done standing"), 64 ("an individual certainly could do [the document preparer job] standing most of the workday. But the DOT classifies it as sedentary, so you could sit on a stool or a chair and, and perform that work."). Nonetheless, Dr. Denny-Brown specified in his RFC opinion that the plaintiff needed to walk around every 60 minutes for up to five minutes and required the opportunity to shift at will from sitting or standing/walking. *See id.* at 370. I am unwilling simply to assume that, had the vocational expert been apprised of these limitations, including those pertaining to walking, his testimony would have remained unchanged.[4]

Reversal and remand accordingly is warranted for purposes of redetermination of the plaintiff's RFC and reconsideration of her ability to perform work existing in significant numbers in the national economy.

### B.  Other Points

For the following reasons, I find the plaintiff's remaining points of error either to be without merit or to supply no independent basis for reversal and remand:

1.  <u>Mental Health Condition Prior to October 2008</u>.  The plaintiff correctly points out that the administrative law judge erred, at Step 2, in suggesting that she suffered from no mental impairment prior to October 2008 on grounds that (i) she failed to report any psychological condition on initially applying for benefits, and (ii) "[t]here is no evidence that [she] complained

---

[4] At oral argument, counsel for the commissioner argued that any error in omitting the restriction pertaining to expected absences was harmless because that opinion did not qualify as a "medical opinion," but rather consisted of speculation on Dr. Denny-Brown's part, and because, in any event, an illness-related absence once a month is not unusual. Counsel cited no authority or evidence in support of either proposition. I reject the assertion that Dr. Denny-Brown's estimate of absences could be safely ignored. The opinions of treating sources even as to issues reserved to the commissioner, such as ultimate disability, must be considered, with good reason supplied for any rejection of such opinions. *See, e.g.*, SSR 96-5p at 127. However, as it happens, the vocational expert did testify on cross-examination that absences *beyond* once a month would "become unreasonable" in the context of the document preparer job. *See* Record at 64. The vocational expert did not expressly testify that absences of once a month would have no impact, *see id.*; however, assuming *arguendo* that his testimony can be so construed, and that the error of omitting to address Dr. Denny-Brown's opinion as to absences accordingly is harmless, the decision must nonetheless be reversed and remanded for the reasons discussed above.

of any mental problems from her alleged onset date until October 2008[.]"  Record at 10; *see also* Statement of Errors at 2.

On the first point, as the plaintiff suggests, it is error at Step 2 to take into account non-medical evidence such as a claimant's failure to report the existence of a psychological condition.  *See, e.g.*, Social Security Ruling 85-28, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 394 ("At the second step of sequential evaluation, . . . medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.").

On the second point, the record does in fact reflect that the plaintiff's former primary care provider assessed her as suffering from anxiety as early as October 2004 and that on at least two occasions, in October 2004 and May 2005, she raised with this provider the possibility of obtaining treatment for that condition.  *See* Record at 237-38, 254.

Nonetheless, inasmuch as appears, these errors do not independently warrant reversal and remand.  The plaintiff points to no manner in which the medical evidence suggests that any mental impairment existing prior to October 2008 affected her capacity to work, and I find none.

    2.  <u>Meeting or Equaling Listing 1.04(A)</u>.  The plaintiff takes the position that her physical impairments meet or equal Listing 1.04(A).  *See* Statement of Errors at 2.  That listing covers disorders of the spine resulting in compromise of a nerve root or of the spinal cord, with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]"  Listing 1.04(A).

The administrative law judge supportably found that the plaintiff's condition did not meet that listing "because examinations have not revealed the requisite neuro-anatomic findings of motor loss and positive straight leg raising in both sitting and supine positions." Record at 10; *see also, e.g., id*. at 256 (notation in October 2005 that plaintiff had normal motor strength in lower extremities), 272 (notation in August 2006 that plaintiff had muscle strength in lower extremities of 5+/5, with straight leg raising negative bilaterally), 370 (no mention of motor loss by Dr. Denny-Brown in his December 2008 RFC assessment).

He did err in failing even to address the question of whether the plaintiff's impairments equaled Listing 1.04(A). *See id*. at 10. Nonetheless, the plaintiff falls short of making a persuasive case that the error independently warrants reversal and remand. She emphasizes that, although she underwent back surgery in December 2004, her condition again deteriorated, with a September 28, 2006, MRI of her lumbar spine revealing disc protrusions and definite impingement on the right S1 nerve root. *See* Statement of Errors at 3-4; Record at 293-95. She also asserts that the administrative law judge failed to investigate the effect of her obesity on her back condition, improperly taking at face value her statement at hearing that she did not believe that her obesity contributed to her back problems. *See* Statement of Errors at 6; Record at 25, 39.

Nonetheless, the physical manifestations to which the plaintiff points are all otherwise taken into account in the listing: back pain, radiation of pain down both legs, more so on the right, limitation of spine motion, the absence of a right ankle jerk reflex, and the presence of positive straight-leg raising in the supine position. *See* Statement of Errors at 4, 6; Listing 1.04(A).[5] She does not explain how the collective presence of some, but not all, of the required

---

[5] At oral argument, counsel for the commissioner pointed out that the radiologist interpreting the plaintiff's September 28, 2006, MRI stated that the plaintiff's history of pain radiating to the left leg did not correlate with MRI findings indicating that she would be symptomatic on the right side. *See* Record at 294. As the plaintiff's
*(continued on next page)*

findings equals the listing or how her obesity causes or exacerbates symptoms that would equal the listing. *See* Statement of Errors at 2-6.

Further, no medical expert of record states that the plaintiff's condition equals Listing 1.04(A). Both medical expert RFC assessments of record indicate that the plaintiff is capable, with certain limitations, of performing sedentary work. *See* Record at 313-20 (RFC assessment of non-examining Disability Determination Services medical advisor Lawrence P. Johnson, M.D.), 369 (RFC assessment of Dr. Denny-Brown). Dr. Johnson explicitly took into account the plaintiff's obesity in reaching his findings. *See id*. at 314.

3. <u>Vocational Testimony and DOT</u>. The plaintiff finally contends that the administrative law judge erred in failing to reconcile an asserted discrepancy between his finding that the plaintiff was capable of performing only unskilled work and the description of the document preparer job as having a General Educational Development ("GED") reasoning level of three. *See* Statement of Errors at 7-8. This argument proceeds from a flawed premise: that this court has held a limitation to *unskilled work* discrepant with a job listed in the DOT as having a GED reasoning level of three. Instead, this court has held limitations to work entailing only simple instructions or simple tasks discrepant with a job so listed. *See, e.g., Bossi v. Astrue*, Civil No. 09-60-P-H, 2009 WL 3633230, at *6 (D. Me. Oct. 31, 2009) (rec. dec., *aff'd* Nov. 11, 2009); *Riley v. Astrue*, No. 06-95-B-W, 2007 WL 951424, at *4 (D. Me. Mar. 27, 2007) (rec. dec., *aff'd* Apr. 18, 2007); *Flagg v. Barnhart*, No. 04-45-B-W, 2004 WL 2677208, at *5 (D. Me. Nov. 24, 2004) (rec. dec., *aff'd* Dec. 14, 2004). As this court has itself observed, "the skill level of work bears on SVP [specific vocational preparation], not on GED reasoning level." *Briggs v.*

---

counsel rejoined, there is in fact significant record evidence of complaints of right-sided radicular pain. *See, e.g., id*. at 311, 323, 326, 328. Nonetheless, as noted above, radicular pain is part of the constellation of symptoms taken into consideration in determining if one meets the listing in question.

10

*Astrue*, Civil No. 08-05-B-W, 2008 WL 4849332, at *3 n.3 (D. Me. Nov. 6, 2008) (rec. dec., *aff'd* Nov. 25, 2008). The DOT indicates that the document preparer job has an SVP of two. *See* DOT § 249.587-018. That is compatible with a limitation to unskilled work. *See, e.g.,* Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009) ("SSR 00-4p"), at 245 ("Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2[.]").[6]

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 10th day of May, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[6] At oral argument, the plaintiff's counsel contended that because the commissioner's regulations define "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time[,]" 20 C.F.R. §§ 404.1568(a), 416.968(a), a person limited to unskilled work cannot perform a job with a GED reasoning level of three. Yet, the question presented is whether vocational testimony is consistent with the DOT, not with the commissioner's regulations. The DOT defines skill, or SVP, level in relation to the amount of time necessary to acquire the skills necessary to perform a particular job, not in relation to the simplicity or complexity of the tasks involved. *See* Appendix C, § II to DOT ("Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.").